UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION


UNITED STATES OF AMERICA,                                                      Plaintiff,

v.                                            Criminal Action No. 3:16-cr-82-DJH

ISMAEL GONZALEZ,
DANTE WATTS,
ARIEL CRUZ,
OSCAR ARGUETA,
KINIKI LUCAS, and
JOLIE JOHNSON, et al.,                                                     Defendants.

* * * * *

## MEMORANDUM OPINION AND ORDER

Defendant Jolie Johnson requests that the Court suppress evidence obtained through wiretaps in this drug-trafficking case, arguing that the government failed to demonstrate the necessity of the wiretaps, as required under the law. (Docket No. 149) Defendants Ismael Gonzalez, Ariel Cruz, Oscar Argueta, Kiniki Lucas, and Dante Watts joined Johnson's motion. (D.N. 155; D.N. 156; D.N. 158; D.N. 159; D.N. 160; D.N. 161; D.N. 163) The United States maintains that the wiretaps and underlying affidavits satisfy the statutory requirement for necessity. (D.N. 164) For the reasons discussed below, the motion to suppress will be denied.

## I.      BACKGROUND

Defendants Ismael Gonzalez, Dante Watts, Ariel Cruz, Oscar Argueta, Carlos Catalan, Kiniki Lucas, and Jolie Johnson were originally indicted on July 6, 2016, on one count of conspiracy to possess with intent to distribute heroin, methamphetamine, and cocaine. (D.N. 18) On June 27, 2017, the grand jury returned a superseding indictment further alleging that Defendants Gonzalez, Watts, and Johnson conspired to launder the proceeds of their unlawful

1

drug-trafficking activities and that Watts conducted financial transactions knowing they were designed to disguise the source of the proceeds.  (D.N. 118)

At least some of the government's evidence against Defendants was obtained via wiretaps approved by this Court.  Each wiretap application was accompanied by an affidavit providing support for the application.  Eight wiretap applications, along with their supporting affidavits, were submitted in this case.  (D.N. 149-1; D.N. 149-2; D.N. 149-3; D.N. 149-4; D.N. 149-5; D.N. 149-6; D.N. 149-7; D.N. 149-8)  Only three are relevant here, however.  The Gonzalez wiretap was supported by Affidavit IV and approved on May 3, 2016.  (D.N. 149-4) The Court also approved two wiretaps of Ricardo Ruiz, who has not been indicted in this action. The first Ruiz wiretap was supported by Affidavit III and approved on April 8, 2016.  (D.N. 149-3)  The second Ruiz wiretap was supported by Affidavit V and approved on May 20, 2016. (D.N. 149-5)  DEA Agent Brian Sanders submitted the affidavits in support of all three of these wiretaps.  (D.N. 149-4, PageID # 700; D.N. 149-3, PageID # 634; D.N. 149-5, PageID # 758)

Defendant Jolie Johnson filed a motion to suppress on July 21, 2017, arguing that the government's wiretap of Gonzalez was illegal because the government had not exhausted normal investigative methods before applying for the wiretap.  (D.N. 149, PageID # 475)  Johnson's motion to suppress addressed Affidavit IV, which Agent Sanders submitted in support of the Gonzalez wiretap.  (*Id.*, PageID # 487)  Defendants Gonzalez, Cruz, Argueta, Lucas, and Watts joined Johnson's motion to suppress.[1]  (D.N. 155; D.N. 156; D.N. 158; D.N. 159; D.N. 160; D.N. 163)  Gonzalez later extended the suppression motion to apply to the two wiretaps of Ruiz as well.  (D.N. 161; D.N. 163)

---

[1] Carlos Catalan is the only defendant who did not join Johnson's motion to suppress.  Therefore, references to "Defendants" throughout this opinion do not include Catalan.

The United States argues that it properly obtained the wiretaps and that each of the affidavits supporting the applications contained "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." (D.N. 164, PageID # 1065) In her reply brief, Defendant Johnson alleged for the first time that Agent Sanders intentionally omitted from his affidavits information about a separate federal prosecution in the Eastern District of Kentucky that involved Gonzalez. (D.N. 167, PageID # 1259-60) Defendants Gonzalez and Watts joined Johnson's reply, and Gonzalez requested an evidentiary hearing to determine whether Sanders was forthcoming with the Court regarding the necessity of the wiretaps. (D.N. 170, PageID # 1280-81; D.N. 173; D.N. 178) The Court granted the United States leave to file a sur-reply so that it could respond to the argument that Sanders omitted information from his affidavits. (D.N. 174; D.N. 176) In its sur-reply, the United States noted that the affidavits did in fact discuss the charges in the Eastern District and argued that any omission was not material to the determination of necessity for the wiretaps.[2] (D.N. 177, PageID # 1300-03)

---

[2] Courts ordinarily refuse to consider arguments raised for the first time in a reply brief. *See, e.g.*, *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008); *United States v. Sweeney*, No. 1:12-cr-92, 2013 WL 1489108, at *3 (E.D. Tenn. Feb. 7, 2013). However, the Court has discretion to allow the other party to file a sur-reply addressing the newly raised argument. *See GE Commercial Distribution Fin. Corp. v. W.W. Cycles, Inc.*, No. 4:10-cv-2673, 2011 WL 1831752, at *3 n.4 (N.D. Ohio May 12, 2011) (citing *Flowers*, 513 F.3d at 553); *United States v. 2007 BMW 335i Convertible, VIN:WBAWL73547PX47374*, 648 F. Supp. 2d 944, 952-53 (N.D. Ohio 2009). If the Court allows a sur-reply, then no prejudice results from the Court's consideration of the argument newly raised in the reply brief. *2007 BMW 335i Convertible*, 648 F. Supp. 2d at 952-53. Accordingly, it is appropriate under these circumstances for the Court to consider the arguments raised for the first time in Defendants' reply briefs.

## II. DISCUSSION

### A. Standing

The United States contends that some of the defendants lack standing to challenge the wiretaps. (*See* D.N. 164, PageID # 1082-84) Only an "aggrieved person" "may move to suppress the contents of any wire or oral communication . . . or evidence derived therefrom." 18 U.S.C. § 2518(10)(a). The term "aggrieved person" is defined as "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed." § 2510(11).

While the United States concedes that Defendant Gonzalez has standing to challenge all three of the wiretaps at issue, it argues that (1) Defendants Lucas and Cruz lack standing to challenge any of the wiretaps in this case; and (2) Defendants Watts, Argueta, and Johnson have standing to challenge Affidavit V only. (D.N. 164, PageID # 1084) And because Defendants Watts, Argueta, and Johnson challenge Affidavit IV and not Affidavit V (*see* D.N. 149, PageID # 487; D.N. 158; D.N. 160), the United States' argument in effect is that the motion to suppress must be denied as to them.

In their motions to adopt Defendant Johnson's motion to suppress the fruits of the Gonzalez wiretap, Defendants Lucas and Argueta do not articulate how the motion to suppress pertains to them or assert a basis for standing to challenge the wiretap. (*See* D.N. 159; D.N. 158) There is nothing in the record to suggest that either Lucas or Argueta was a party to any conversation intercepted under the Gonzalez wiretap, and Lucas and Argueta were not targeted by that wiretap. (*See* D.N. 149-4) For her part, Defendant Cruz asserts in her motion to adopt Defendant Johnson's motion to suppress that "the United States has alleged that Ariel Cruz was captured on the wiretap." (D.N. 156) However, she cites nothing in the record to support that

assertion. (*See id.*)  Moreover, Cruz was not targeted by the Gonzalez wiretap. (*See* D.N. 149-4)  Because Lucas, Argueta, and Cruz are not "aggrieved persons" under § 2518(10)(a), they lack standing to challenge the Gonzalez wiretap.

In his motion to adopt Defendant Johnson's motion to suppress, Defendant Watts asserts that he has standing because he was recorded speaking to Gonzalez on the wiretap and he was a named interceptee or target telephone owner in all subsequent wiretaps. (D.N. 160, PageID # 1052)  In support, Watts cites Affidavit VI, which supported another wiretap that is not at issue in this motion to suppress. (*See id.*; D.N. 149-6, PageID # 830)  As with Defendants Lucas and Argueta, there is nothing in the record to suggest that Watts was a party to any conversation intercepted under the Gonzalez wiretap, and that wiretap did not target Watts. (*See* D.N. 149-4)  Watts is not even mentioned as a target of the investigation in Affidavit IV, which supported the Gonzalez wiretap he now challenges. (*See id.*, PageID # 701-03)  *Cf. United States v. Wright*, 635 F. App'x 162, 170 (6th Cir. 2015) (finding that the defendant lacked standing to challenge wiretap applications where he was not even mentioned as a target of the investigation in the supporting affidavits).  Moreover, the fact that Watts was a named interceptee or target telephone owner in later wiretaps does not give him standing to challenge the Gonzalez wiretap. *See* 18 U.S.C. § 2510(11) (stating that a person must be either a party to an intercepted communication or a target of the interception in order to challenge a wiretap).  Because Watts is not an "aggrieved person" under § 2518(10)(a), he lacks standing to challenge the Gonzalez wiretap.

Finally, in her motion to suppress the fruits of the Gonzalez wiretap, Defendant Johnson asserts that she has standing to challenge the wiretap because she "is one of the people whose conversations with Mr. Gonzalez were recorded after the agents began eavesdropping on Mr. Gonzalez's phone." (D.N. 149, PageID # 487)  In support, she also cites Affidavit VI, which (as

previously mentioned) supported a separate wiretap that is not at issue here. (*See id.*; D.N. 149-6, PageID # 831, 834, 839, 841, 848)  The record contains nothing from which the Court may conclude that Johnson was a party to any conversation intercepted under the Gonzalez wiretap, and Johnson was not targeted by that wiretap. (*See* D.N. 149-4)  Like Watts, Johnson is not even mentioned as a target of the investigation in Affidavit IV, which supported the Gonzalez wiretap she now challenges. (*See id.*, PageID # 701-703)  *See Wright*, 635 F. App'x at 170.  Because Johnson is not an "aggrieved person" under § 2518(10)(a), she also lacks standing to challenge the Gonzalez wiretap.

The Court concludes that Defendants Lucas, Argueta, Cruz, Watts, and Johnson lack standing to challenge the wiretaps at issue in this case.

**B.     Necessity**

Even if Defendants all had standing to challenge the wiretaps, the Court would nonetheless conclude that the motion to suppress should be denied because the necessity requirement was met.

**1.     Standard**

Defendants contend that suppression is warranted because the affidavits in support of the wiretap applications do not meet the requirements of 18 U.S.C. § 2518. (*See* D.N. 149, PageID # 473-75)  Section 2518 provides:

> Each application for an order authorizing or approving the interception of a wire, oral, or electronic communication . . . shall include . . . a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.

18 U.S.C. § 2518(1)(c).  This is known as the "necessity requirement."  *United States v. Stewart*, 306 F.3d 295, 304 (6th Cir. 2002).  There must be "strict compliance" with the statute.  *United*

*States v. Alfano*, 838 F.2d 158, 161 (6th Cir. 1988). "[W]here a warrant application does not meet the necessity requirement, the fruits of any evidence obtained through that warrant must be suppressed." *United States v. Rice*, 478 F.3d 704, 710 (6th Cir. 2007).

The necessity requirement was designed "to ensure that a wiretap 'is not resorted to in situations where traditional investigative techniques would suffice to expose the crime.'" *Alfano*, 838 F.2d at 163 (citing *United States v. Kahn*, 415 U.S. 143, 153 n.12 (1974)). However, "the purpose 'is not to foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted, but simply to inform the issuing judge of the difficulties involved in the use of conventional techniques.'" *United States v. Landmesser*, 553 F.2d 17, 20 (6th Cir. 1977) (citing *United States v. Pacheco*, 489 F.2d 554, 565 (5th Cir. 1974)). In other words, "the government is not required to prove that every other conceivable method has been tried and failed or that all avenues of investigation have been exhausted." *Alfano*, 838 F.2d at 163 (citing *United States v. Brown*, 761 F.2d 1272, 1275 (9th Cir. 1985)). "All that is required is that the investigators gave serious consideration to the non-wiretap techniques prior to applying for wiretap authority and that the court be informed of the reasons for the investigators' belief that such non-wiretap techniques have been or will likely be inadequate." *Id.* at 163-64 (quoting *United States v. Lambert*, 771 F.2d 83, 91 (6th Cir. 1985)). The statute does "not require proof of the absolute impossibility of all other means." *Id.* at 164. "[A] reasonable statement of the consideration or use of other investigative means is adequate." *Id.*

However, "a purely conclusory affidavit unrelated to the instant case and not showing any factual relations to the circumstances at hand" would be inadequate. *Landmesser*, 553 F.2d at 20. "What is required . . . is information about particular facts of the case at hand which would indicate that wiretaps are not being 'routinely employed as the initial step in criminal

investigation.'" *Id.* (citing *United States v. Giordano*, 416 U.S. 505, 515 (1974)). The Sixth Circuit has noted that "the mere fact that the affidavit . . . rest[s] in part on statements that would be equally applicable to almost any [drug-trafficking] case does not render the affidavit insufficient." *Id.* (quoting *United States v. Matya*, 541 F.2d 741, 745 (8th Cir. 1976)). Moreover, "the mere fact that some investigative techniques were successful in uncovering evidence of wrongdoing does not mandate that a court negate the need for wiretap surveillance." *Stewart*, 306 F.3d at 305.

The Sixth Circuit has observed that "wiretapping is particularly appropriate when the telephone is routinely relied on to conduct the criminal enterprise under investigation." *Id.* (quoting *Landmesser*, 553 F.2d at 20). This Court has recognized that wiretapping is appropriate "where drug transportation and sales appear to have been frequently coordinated via cellphone." *United States v. Mattingly*, No. 3:15-cr-99-DJH, 2016 WL 3670828, at *8 (W.D. Ky. July 1, 2016). Moreover, the Sixth Circuit has approved wiretaps that investigators argued were necessary to "establish[] the scope of the conspiracy" even though they already had sufficient evidence against an individual defendant. *United States v. Jenkins*, 659 F. App'x 327, 335 (6th Cir. 2016).

### 2. The Individual Affidavits Meet the Necessity Requirement

Defendants argue that the Ruiz wiretap had been "devastatingly effective" against Gonzalez in just a few weeks and that investigators "had hardly begun to exploit it, let alone exhaust it" when they applied for the Gonzalez wiretap. (D.N. 149, PageID # 491) But the fact that a prior wiretap was successful in uncovering incriminating evidence does not negate the need for another wiretap. *See Stewart*, 306 F.3d at 305. And "the government is not required to prove that . . . all avenues of investigation have been exhausted." *Alfano*, 838 F.2d at 163.

Further, a wiretap may be needed to establish the scope of the overall conspiracy even if investigators had already gathered sufficient incriminating evidence against Gonzalez. *See Jenkins*, 659 F. App'x at 335.

Defendants further argue that because agents utilized traditional investigative techniques for only thirteen days when they sought the Gonzalez wiretap, it could not be that those techniques were tried and failed or that they were unlikely to succeed if tried. (D.N. 149, PageID # 492) But "the government is not required to prove that every other conceivable method has been tried and failed." *Alfano*, 838 F.2d at 163. Instead, "[a]ll that is required is that the investigators gave serious consideration to the non-wiretap techniques prior to applying for wiretap authority and that the court be informed of the reasons for the investigators' belief that such non-wiretap techniques have been or will likely be inadequate." *Id.* at 163-64. As discussed below, the affidavits show that the government fulfilled that requirement in this case.

### a.      Affidavit IV (Gonzalez Wiretap)

Affidavit IV stated that one confidential source, Muse, provided valuable historical information regarding the Gonzalez drug-trafficking organization but that he had no details regarding how Gonzalez currently purchases or transports drugs. (D.N. 149-4, PageID # 721) In addition, the affidavit explained that it was unlikely that an undercover agent would get further access into the organization because it is common for such organizations to compartmentalize so that various members do not learn each other's identities. (*Id.*, PageID # 722) The affidavit further stated that physical surveillance had failed to reveal Gonzalez's current address or vehicle, and one attempt at surveillance ended with Gonzalez getting lost in traffic. (*Id.*, PageID # 723-24) Regarding the possibility of surveillance, the affidavit explained that observing Gonzalez would not reveal the purpose of meetings or activities and that, based on Agent

Sanders's experience (including his experience in the present investigation), major drug traffickers quickly detect surveillance. (*Id.*, PageID # 724-25)

The affidavit dismissed the utility of pen registers, because they do not provide information as to the substance of conversations or the identities of the conversants. (*Id.*, PageID # 726) It further stated that subscriber information is often inaccurate or unavailable and that investigators had received no accurate subscriber information for numbers in contact with the telephone at issue. (*Id.*, PageID # 727) Search warrants were not feasible, as investigators did not know where Gonzalez lived or where the drug-trafficking organization stored drugs or proceeds. (*Id.*) Investigators could not track Gonzalez's vehicle because they were unable to locate him with any regularity. (*Id.*, PageID # 728) Geo-location data for the telephone revealed a variance of 1800 meters, preventing investigators from pinpointing Gonzalez's location. (*Id.*) Trash searches had not been attempted because Gonzalez's residence was unknown, and based on Sanders's experience, high-level drug traffickers would not use their trash containers to dispose of valuable information. (*Id.*, PageID # 729-30)

In sum, the information in Affidavit IV shows that investigators seriously considered non-wiretap techniques and provided the Court with reasons for their belief that those techniques would be inadequate, and that is sufficient for the government to meet the necessity requirement. *See Alfano*, 838 F.2d at 163-64.

### b. Affidavit III (Ruiz Wiretap)

Affidavit III stated that a confidential source purchased heroin from Estrada (one of Ruiz's associates) but that the source was in no position to provide information regarding Estrada's methods of purchasing and transporting large shipments of drugs. (D.N. 149-3, PageID # 661) Thus, investigators were unable to identify others to whom Estrada supplied

drugs.  (*Id.*)  The affidavit explained that an undercover agent would be unlikely to get further access into the drug-trafficking organization because of compartmentalization, *see supra* Section II.B.2.a.  (*Id.*, PageID # 662)  Investigators had physically surveilled Estrada, allowing them to identify Ruiz.  (*Id.*, PageID # 663-64)  However, they were unable to surveil Ruiz because of his use of counter-surveillance techniques.  (*Id.*, PageID # 664)  Moreover, surveillance would not reveal the purpose of meetings and activities.  (*Id.*)

Pen registers would not provide information on the substance of conversations or the identities of conversants.  (*Id.*, PageID # 666)  And subscriber information was often inaccurate or missing.  (*Id.*, PageID # 667)  With respect to search warrants, investigators thought it unlikely that Ruiz would maintain narcotics at his residence.  (*Id.*, PageID # 668)  And search warrants can tip off targets.  Investigators decided not to execute a search warrant at one location that they expected to be a storage area because that would likely end the investigation and make it impossible to determine Estrada's sources of supply.  (*Id.*)  Investigators tracked Ruiz's vehicle, but the tracker provided little evidentiary value due to Ruiz's erratic driving.  (*Id.*, PageID # 669)  The affiant concluded that trash searches were likely to be inadequate, since Ruiz had been observed placing trash in his vehicle to discard elsewhere.  (*Id.*, PageID # 670)

Again, all of this information shows that investigators seriously considered non-wiretap techniques and provided the Court with reasons for their belief that those techniques would be inadequate, and the necessity requirement is therefore met.  *See Alfano*, 838 F.2d at 163-64.

### c.        **Affidavit V (Ruiz Wiretap)**

Since this wiretap application was for an extension of a prior wiretap on Ruiz's phones (*see* D.N. 149-5, PageID # 746-47, 760), Affidavit V referred to Affidavit III to recount alternative investigative techniques, including attempts to insert a confidential source into the

Ruiz drug-trafficking organization. (*Id.*, PageID # 781) In addition, investigators observed meetings between Gonzalez and Ruiz, but they were unable to gain any useful information as a result. (*Id.*, PageID # 782) Moreover, any further surveillance would not prove the purpose of these meetings or other activities and would likely result in detection. (*Id.*, PageID # 782-83) The affiant noted that pen registers would not provide any information as to the substance of conversations or the identities of conversants and that pen registers are typically inaccurate and incomplete. In fact, subscriber information for Ruiz's phones revealed a significant number of phone numbers with no name listed. (*Id.*, PageID # 784-85)

With respect to search warrants, the affidavit stated that investigators knew of no location where Ruiz stored drugs or proceeds. (*Id.*, PageID # 786) Ruiz stated in prior intercepted calls that he did not keep narcotics at his residence. (*Id.*) A tracking device on Ruiz's car yielded little helpful information because of Ruiz's erratic driving, and Ruiz drove various vehicles. (*Id.*, PageID # 787) And finally, trash searches could not be attempted because Ruiz took his trash elsewhere to discard, including to his neighbors' houses. (*Id.*, PageID # 787-88) This happened during daylight hours, making it difficult for investigators to retrieve without detection. (*Id.*, PageID # 788)

As with Affidavits IV and III, the above information shows that investigators seriously considered non-wiretap techniques and provided the Court with reasons for their belief that those techniques would be inadequate. Thus, the necessity requirement is satisfied. *See Alfano*, 838 F.2d at 163-64.

### 3. The Affidavits Are Not Unduly Conclusory

Finally, Defendants argue that the government's evidence of necessity consisted of "a catalogue of the inherent limitations of each traditional investigative technique" rather than a

demonstration that the techniques had already failed or that they could not generate any useful information. (D.N. 149, PageID # 492-93) A closer look at each investigative technique, however, shows that the government carefully considered each one.

### a. Confidential Sources

In response to the agents' assertion that they had no success introducing confidential sources into the Gonzalez drug-trafficking organization, Defendants indicate that the agents had not tried to contact their prior source or to develop a new source. (*Id.*, PageID # 493) Instead, the affidavit merely stated that the typical drug trafficker was reluctant to divulge other members of the organization or his source of supply and that confidential sources cannot always identify the full scope of the organization. (*Id.*) However, the Sixth Circuit has upheld affidavits containing similar assertions. For example, in *Jenkins*, the court observed that "confidential informants had been useful in gaining intelligence and executing controlled purchases, but had limited success in obtaining information about the scope of [the drug-trafficking] organization, having 'never held a position of trust.'" 659 F. App'x at 334. The court further observed that "there were no cooperating witnesses in a position to introduce an undercover agent to [the target of the investigation], who was 'cautious and untrusting.'" *Id.* The court held that the affidavits at issue mirrored those observations and were sufficient to satisfy the necessity requirement. *Id.* As in *Jenkins*, the affidavits in this case are sufficient to meet the necessity requirement.

### b. Physical Surveillance

With respect to the agents' assertion that physical surveillance had only limited success in the investigation, Defendants point out that the affidavit does not state that Gonzalez had spotted investigators, yet it reads that surveillance is extremely difficult to do over an extended period of time without detection. (D.N. 149, PageID # 494) According to the agents, physical

surveillance without a wiretap generally cannot prove the purpose of meetings or the roles of various conspirators, whereas physical surveillance plus a wiretap can provide valuable proof of criminal activity.  (*Id.*)  Again, the Sixth Circuit's decision in *Jenkins* is instructive.  In that case, the court noted that targets of the investigation "were alert to detection, as seen in [the target's] routine use of counter surveillance."  *Jenkins*, 659 F. App'x at 334.  The affidavits in *Jenkins* similarly listed various investigative techniques that were considered but not attempted because they "were deemed unlikely to yield useful information, likely to compromise the investigation, or both."  *Id.*  The court determined that the affidavits were sufficient.  *Id.*  Likewise, this Court finds the affidavits in this case to be sufficient.

### c.      Toll Information

In response to the agents' assertion that toll information could not provide evidence of the substance of conversations or the identities of the individuals speaking and that subscriber information for phone numbers is often undependable, Defendants point out that the affidavit does not make clear whether investigators had asked for subscriber information, although it stated that agents had received no accurate subscriber information for numbers in contact with Gonzalez's phone.  (D.N. 149, PageID # 495)  Similarly, in *Jenkins*, investigators noted in affidavits that they had had some success with phone records but that the records "were of limited value without knowing the identities of the parties or the substance of the call."  659 F. App'x at 334.  The affidavits were nonetheless found to be sufficient.  *Id.*  Moreover, the government is not required to prove that every other method was tried and failed; it must simply show that other methods were considered.  *See Alfano*, 838 F.2d at 163-64.  The government has made that showing through the affidavits in this case.

#### d.     Vehicle Tracking

With respect to the agents' assertion that a tracking device had not been installed on Gonzalez's car because they had not been able to locate Gonzalez with regularity, Defendants note that agents had already followed Gonzalez in a white Impala with a temporary tag.  (D.N. 149, PageID # 496)  However, Defendants omit the fact that although surveillance was attempted on Gonzalez, it was terminated after a short time when Gonzalez made a u-turn and investigators lost him in traffic.  (D.N. 149-4, PageID # 724)  Moreover, limited success with one investigative technique will not typically negate the necessity for a wiretap.  *See Stewart*, 306 F.3d at 305.  Thus, the fact that investigators were able to follow Gonzalez for a brief time on one occasion did not eliminate the need for the wiretaps.

#### e.     Phone Geo-Location Data

In response to the agents' assertion that geo-location tracking data from Gonzalez's phone had been of little value because the variance was around 1800 meters, Defendants state that the data had already confirmed that Gonzalez maintained a residence in Jeffersontown, Kentucky.  (D.N. 149, PageID # 496)  But again, the fact that geo-location tracking data had produced some useful information does not negate the necessity for a wiretap.  *See Stewart*, 306 F.3d at 305; *see also Jenkins*, 659 F. App'x at 334 (finding affidavits sufficient even though they recounted three instances of limited success with other investigative techniques).

#### f.     Trash Searches

With respect to the agents' assertion that trash searches would probably never work because drug traffickers go to great lengths to avoid keeping incriminating evidence close to home, Defendants argue that there was no concrete indication that Gonzalez had the same habits of other drug traffickers.  (D.N. 149, PageID # 496-97)  This Court, however, has found

affidavits to be sufficient when they included the investigator's belief that trash searches would be unlikely to yield valuable evidence in light of the fact that, in the investigator's experience, "high-level drug traffickers destroy[] incriminating items instead of discarding them in the trash." *See United States v. Walkup*, No. 1:09-CR-00026-R, 2010 WL 4778788, at *2-4 (W.D. Ky. Nov. 16, 2010).

The affidavits in this case are not "purely conclusory" or "unrelated to the instant case and not showing any factual relations to the circumstances at hand." *Landmesser*, 553 F.2d at 20. To the contrary, the affidavits contain facts that are specific to the case at hand. And to the extent that the affidavits' assertions of necessity are similar or repetitive, that is not fatal to the finding of necessity. *See Jenkins*, 659 F. App'x at 335-36 (rejecting the defendants' argument that affidavits were conclusory and boilerplate where they discussed why each alternative investigative method was unsuccessful or dangerous and showed that investigators seriously considered each alternative and determined them to be inadequate under the circumstances). The Court also notes that, even if the affidavits "rest[] in part on statements that would be equally applicable to almost any [drug-trafficking] case," that fact would not render the affidavits insufficient. *Landmesser*, 553 F.2d at 20. The Court therefore finds that the affidavits meet the necessity requirement.

### C. *Franks* Hearing

#### 1. Standard

Defendants request an evidentiary hearing in order to determine whether Agent Sanders was forthcoming with the Court regarding the necessity of the wiretaps. (D.N. 167, PageID # 1259-60; D.N. 170, PageID # 1280-81) Specifically, Defendants allege that Sanders omitted information from the supporting affidavits. (*Id.*) To obtain a *Franks* hearing, Defendants must

make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit and [] the allegedly false statement is necessary to the finding of probable cause." *United States v. Poulsen*, 655 F.3d 492, 504 (6th Cir. 2011) (alteration in original) (quoting *United States v. Mastromatteo*, 538 F.3d 535, 545 (6th Cir. 2008)).

> A defendant who challenges the veracity of statements made in an affidavit that formed the basis for a warrant has a heavy burden. His allegations must be more than conclusory. He must point to specific false statements that he claims were made intentionally or with reckless disregard for the truth.

*United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). In addition, the defendant "must accompany his allegations with an offer of proof." *Id.* "If he meets these requirements, then the question becomes whether, absent the challenged statements, there remains sufficient content in the affidavit to support a finding of probable cause." *Id.*

"[T]he *Franks* doctrine applies to omissions of information from affidavits as well." *Mays v. City of Dayton*, 134 F.3d 809, 815 (6th Cir. 1998) (citing *United States v. Bonds*, 12 F.3d 540, 568-69 (6th Cir. 1993)); *see United States v. Young*, 847 F.3d 328, 348-49 (6th Cir. 2017). Moreover, the Sixth Circuit has applied the *Franks* doctrine where defendants moved to suppress wiretap information on grounds that necessity had not been shown and requested an evidentiary hearing to determine the veracity of the agent who submitted the affidavit in support of the wiretap application. *See United States v. Giacalone*, 853 F.2d 470, 473-76 (6th Cir. 1988); *see also Stewart*, 306 F.3d at 304-06. However, in the context of necessity for a wiretap, the *Franks* analysis changes slightly to require the defendant to show that the necessity requirement would not have been met absent the challenged statements or omissions. *See United States v. Kelley*, 596 F. Supp. 2d 1132, 1151 (E.D. Tenn. Jan. 9, 2009).

The Sixth Circuit has "repeatedly held that there is a higher bar for obtaining a *Franks* hearing on the basis of an allegedly material omission as opposed to an allegedly false affirmative statement." *United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008). "Allegations of material omission are held to a higher standard because of the 'potential for endless rounds of *Franks* hearings' due to potentially 'endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to [the] defendant's benefit.'" *Id.* at 415-16 (quoting *United States v. Martin*, 920 F.2d 393, 398 (6th Cir. 1990)). "[E]xcept in the *very* rare case where the defendant makes a strong preliminary showing that the affiant *with an intention to mislead* excluded critical information from the affidavit, and the omission is critical to the finding of probable cause [or in this case, necessity], *Franks* is inapplicable to the omission of disputed facts." *Mays*, 134 F.3d at 816.

### 2.     A *Franks* Hearing Is Not Warranted

Defendant Johnson alleges that Agent Sanders omitted information about an ongoing federal prosecution in the Eastern District of Kentucky involving James Ronald Muse from Affidavit IV. (D.N. 167, PageID # 1259) The affidavit allegedly omits that (1) Muse's drug sales with Gonzalez were also the subject matter of the federal charges pending against Muse in the Eastern District; (2) Gonzalez was a target for prosecution in the Eastern District case; and (3) Gonzalez was indicted in the Eastern District before Sanders submitted his last wiretap request for Gonzalez. (*Id.*, PageID # 1259-60) Defendant Gonzalez similarly alleges that Sanders omitted information about the Eastern District investigation from his affidavits.[3] (D.N. 170, PageID # 1280-81)

---

[3] Gonzalez adds that large portions of Sanders's affidavits include alleged quotations from wiretapped phone calls that were likely originally conducted in Spanish and that no explanation is provided as to how they were translated. (D.N. 170, PageID # 1280) But he does not offer

The United States responds that Affidavit IV discusses Muse's interview with the DEA in which Muse stated that Gonzalez provided him with 100 pounds of methamphetamine. (D.N. 177, PageID # 1301) Therefore, a common-sense reading of the affidavit leads to the conclusion that Gonzalez was a target and was subject to charges. (*Id.*) Further, the United States argues that the fact that charges were being considered and were later brought in the Eastern District is not material to the determination of necessity in this case because the Western District investigation was focused on current activities, whereas the Muse information was limited to a conspiracy that ended in August 2015. (*Id.*, PageID # 1301-02) The United States admits that the actual indictment returned on June 23, 2016, was omitted from Affidavit VIII, which was submitted on June 29, 2016. (*Id.*, PageID # 1302; D.N. 149-8, PageID # 962) However, the United States argues that the omission was immaterial because the undisclosed Eastern District indictment of Gonzalez in the Muse conspiracy would not have diminished the necessity of the wiretap in a different and broader conspiracy in this district. (D.N. 177, PageID # 1302-03) Moreover, the United States points out that the Eastern District indictment was sealed and remained sealed throughout the wiretap process in this case. (*Id.*, PageID # 1303)

As an initial matter, Affidavit IV shows that much of the allegedly omitted information was in fact included in the affidavit. The affidavit includes information that Muse cooperated with the DEA in London, Kentucky, because he faced methamphetamine charges in the Eastern District. (D.N. 149-4, Page ID # 711-12) Muse began selling large quantities of methamphetamine on behalf of Gonzalez in 2013. (*Id.*, PageID # 712) Muse received 100 pounds of methamphetamine from Gonzalez over a two-year period. (*Id.*) Gonzalez worked out

---

any proof of a false statement, material omission, or misrepresentation. (*See id.*) That is detrimental to his demand for a *Franks* hearing on this basis. *See Stewart*, 306 F.3d at 304-06; *Bennett*, 905 F.2d at 934.

of a garage on Outer Loop Road in Louisville.  (*Id.*)  Gonzalez's organization had semi-trucks that distributed drugs from Louisville to Chicago.  (*Id.*)  Thus, the affidavit does not omit information regarding Muse's involvement with Gonzalez.  Rather, the affidavit discusses those drug sales and the pending charges against Muse.  And although the affidavit does not use the word "target," it makes clear that Gonzalez was a person of interest in the Eastern District investigation.  After all, the affidavit states that Muse was cooperating with DEA agents there and proceeds to outline the incriminating information Muse gave them with respect to Gonzalez. Under these circumstances, the fact that the affidavit does not state that Gonzalez was a target is hardly an omission.  *See Fowler*, 535 F.3d at 416 (rejecting argument that agents failed to acknowledge confidential informant's criminal activity because affidavit stated that informant had sold methamphetamine to the defendant).

The fact that Gonzalez was later indicted in the Eastern District is the only potentially salient fact omitted by Sanders.  And it could only have been omitted from Affidavit VIII, since that affidavit was the only one submitted after the Eastern District indictment was returned on June 23, 2016.  (*See* D.N. 167, PageID # 1260; D.N. 177, PageID # 1299; D.N. 149-8, PageID # 962)  As discussed below, this omission is immaterial.

In any event, it is not reasonable to conclude that Agent Sanders intended to mislead the Court by omitting mention of the Eastern District indictment.  To warrant a *Franks* hearing, Defendants must make a substantial showing that Sanders "knowingly and intentionally, or with reckless disregard for the truth" made material omissions from his affidavit.  *See Young*, 847 F.3d at 348-49.  *Young* makes clear that a mere allegation that Sanders intended to mislead the judge is insufficient to warrant a *Franks* hearing.  *See id.* at 349.  And that is all Defendants have offered here: that Sanders's omissions "must have been intentional" because "the most minimal

coordination between Agent Sanders" and the DEA agent in the Eastern District would have been enough to keep Sanders informed of the pending charges. (D.N. 167, PageID # 1260) But arguing that the affiant should have engaged in further investigation before seeking a wiretap is not sufficient "because it does not speak to . . . intent to mislead." *See Hale v. Kart*, 396 F.3d 721, 727 (6th Cir. 2005).

Finally, Defendants have not shown, or even argued, that the necessity requirement would not have been met if the indictment had been mentioned in the affidavit. *See Young*, 847 F.3d at 349. (*See* D.N. 167, PageID # 1259-60; D.N. 170, PageID # 1280-81) No *Franks* hearing is warranted if there is sufficient content in the affidavit for a finding of necessity regardless of whether the information was included. *See Young*, 847 F.3d at 349; *United States v. Branch*, No. 5:12-cr-286, 2013 WL 1000561, at *22 (N.D. Ohio Mar. 13, 2013). Following from the discussion above, the Court finds that there was sufficient content in the affidavits to satisfy the necessity requirement. *See supra* Section II.B. And even if the Eastern District indictment had been included in the affidavits, the Court would still find that the necessity requirement had been met. The Muse investigation that led to the Eastern District indictment of Gonzalez related to methamphetamine trafficking from 2013 to 2015. (*See* D.N. 149-4, PageID # 712) The current investigation into the Gonzalez drug-trafficking organization did not begin until March 2016. (*See id.*, PageID # 702, 711) Thus, the Court finds that necessity would have existed for the wiretaps at issue even if the Eastern District indictment had been mentioned in the supporting affidavits. *See United States v. Cruz-Cruz*, No. CR13-49RSL, 2014 WL 4983491, at *2 (W.D. Wash. Oct. 6, 2014) (explaining that omitted information regarding the defendant's involvement in older conspiracy would not have affected necessity determination for wiretap in current conspiracy). Therefore, no *Franks* hearing is warranted.

### III. CONCLUSION

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that Defendants' motion to suppress (D.N. 149) is **DENIED**. A status conference will be set by subsequent order.