UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CRIMINAL ACTION NO. 3:16-CR-00082-CHB-LLK-1 (Gonzalez)

**UNITED STATES OF AMERICA**                                                                 **PLAINTIFF**

**v.**

**ISMAEL GONZALEZ, et al.**                                                                         **DEFENDANTS**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court upon the motion of Defendant Ismael Gonzalez to suppress, to which the United States responded in opposition. (Docket # 255, 259). The Court referred the matter to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636. (Docket # 261).

On October 1, 2018, the undersigned conducted a telephonic status conference at which Gonzalez and the United States discussed the fact that the motion (Docket # 255) argues that the search exceeded the scope of the warrant and that the response argues that Gonzalez lacks Fourth-Amendment standing to object to the search (Docket # 259). The parties agreed that, if Gonzalez lacks standing, an evidentiary hearing on Gonzalez' motion is unnecessary. The parties further agreed that the best way to proceed would be to allow Gonzalez to file a supplemental brief in support of standing and allow the United States to respond.[1] Gonzalez and the United States filed their supplemental briefs. (Dockets # 265, 268).

Because Gonzalez lacks standing to object to the search, the RECOMMENDATION will be that the Court DENY Gonzalez' motion to suppress (Docket # 255).

### Procedural history

Authorities obtained a warrant to search an auto repair shop located at 6309 Strawberry Lane in Louisville, Kentucky, which was the target of a drug-trafficking investigation. (Docket # 278, p. 1). The

---

[1] The United States reserved the right to argue that the search did not exceed the scope of the warrant in the event it loses on its lack of standing argument.

1

warrant authorized search of the shop's building and grounds. (Docket # 255, p. 1). Authorities executed the warrant on July 2, 2016, and the search resulted in discovery of incriminating cocaine and heroin in a truck parked on the shop's grounds. (Docket # 259, p. 1). The undersigned submitted a prior report recommending denial of Gonzalez' motion to suppress. (Docket # 271).

Defendant Carlos Catalan filed a motion to join Gonzalez' motion to suppress (Docket # 266), and the United States responded in opposition (Docket # 268). The undersigned construed Catalan's motion as an independent motion to suppress (not dependent on whether Gonzalez is entitled to suppression)[2] and ordered further briefing. (Docket # 274). Catalan and the United States filed supplemental briefs. (Dockets # 276, 278).

The prior report recommending denial of Gonzalez' motion to suppress inadvertently and erroneously also recommended denial of Catalan's motion to join Gonzalez' motion. (See report at Docket # 271, p. 4 referring to Catalan's motion at Docket # 266). The undersigned intended to analyze Gonzalez' motion and Catalan's motion separately. Because the error has resulted in confusion, the undersigned shall (on today's date): 1) withdraw the prior report recommending denial of Gonzalez' motion (Docket # 271); 2) submit the present report recommending denial of Gonzalez' motion; and 3) submit a report recommending denial of Catalan's motion. The present report differs from the prior report in that it incorporates additional factual information learned in the further briefing on Catalan's motion (Docket # 276, 278), which clarifies and simplifies the analysis.

**The facts surrounding the search**

The recitation of the facts surrounding the July 2, 2016 search at 6309 Strawberry Lane given by Gonzalez and the United States are consistent. However, the United States adds relevant facts. The

---

[2] In multi-defendant cases (such as the present one), "[a] defendant's standing is determined independently from his co-defendant's standing with regard to the same items and places that are searched." *United States v. Mastromatteo*, 538 F.3d 535, 544 (6th Cir. 2008). In other words, Catalan would not obtain suppression of the evidence even if (or just because) Gonzalez did.

United States submitted a sworn statement from Drug Enforcement Agency Special Agent Jennifer Traud to the effect that Defendant Oscar Argueta owned the truck that contained the incriminating drugs. (Docket # 268, p. 4). Additionally, the United States submitted a disc marked "aerial surveillance July 2, 2016," which supports its recitation of the facts. (Docket # 277). According to the United States, the aerial surveillance footage was provided to the Defendants in discovery. (Docket # 276, p. 2).

The United States argues that Gonzalez lacks standing to object to the search. (Dockets # 259, 268). Because Gonzalez carries the burden of proof on the issue of standing, *United States v. Mathis*, 738 F.3d 719, 729 (6th Cir. 2013), and because the United States has submitted evidence in support of its recitation of the facts going beyond mere argument, this report will rely on additional, relevant facts given by the United States.

Catalan leased and operated an auto repair shop on the 6309 Strawberry Lane property. (Docket # 278, 266, 268). Catalan was expecting a tractor-trailer truck that needed to have its brakes repaired. (Docket # 278). At the time of the search, Argueta had just arrived with and parked his truck on the shop's grounds.

According to the United States, the disk marked "aerial surveillance July 2, 2016" (Docket # 277) shows that law enforcement officers entered the property through an open gate and "approached Argueta's truck [only] seconds after [Argueta had] arrived" on the property. (Docket # 276, p. 2). "Argueta was alone in his truck, with the engine still running and did not exit the truck before law enforcement arrived." (*Id.*). "Argueta consented to the search of his truck." (*Id.*). "Argueta told the agents where the drugs were hidden in the driver's truck compartment." (*Id.*).[3] The surveillance video shows "an open gate to the lane alongside the auto shop, which remained open at the time law enforcement approached." (*Id.*).

---

[3] The United States concedes that, because he owned the truck, Argueta has standing to challenge the search of the truck (Docket # 268, p. 3), but Argueta has not moved to suppress.

**Legal standards governing standing to object to a search**

Gonzalez and the United States differ as to whether Gonzalez has standing to object to the search. (Docket # 265, 268).

"[A] defendant has standing to challenge the admission of evidence only if the defendant's own constitutional rights have been violated." *United States v. Mastromatteo*, 538 F.3d 535, 544 (6th Cir. 2008) (quoting *United States v. Davis*, 430 F.3d 345, 359-60 (6th Cir. 2005)). "In cases involving Fourth Amendment violations, we determine standing by deciding whether a defendant can establish a legitimate expectation of privacy in the area searched or the items seized." *Id.* A legitimate expectation of privacy exists when a defendant, "by his conduct, has exhibited an actual (subjective) expectation of privacy" -- that is, has sought "to preserve something as private" -- and when his "subjective expectation of privacy is one that society is prepared to recognize as reasonable." *United States v. Mathis*, 738 F.3d 719, 729 (6th Cir. 2013) (quoting *Smith v. Maryland*, 442 U.S. 735, 740 (1979)).

When challenging the admission of evidence under the Fourth Amendment, it is the defendant's burden to show that he had a legitimate expectation of privacy in the area searched or items seized. *Mathis*, 738 F.3d at 729 (citing *Mastromatteo*, 538 F.3d at 544). If he does not meet this burden, the defendant lacks standing for his challenge. *Id.*

A reasonable expectation of privacy generally has "a source outside the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Rakas v. Illinois*, 439 U.S. 128 n.12 (1978). "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Id.* at 134.

"Because [motor] vehicles are mobile and subject to pervasive government regulation, an individual's justifiable expectation of privacy in a vehicle is less than in his home" and other items of real

or personal property. *New York v. Class*, 475 U.S. 106, 124 (1986). In the context of vehicle searches, the Sixth Circuit has held that a defendant moving to suppress evidence "must demonstrate that he personally had an expectation of privacy in the [vehicle] that society is prepared to consider reasonable." *United States v. Elmore*, 304 F.3d 557, 558, 561 (6th Cir. 2002). Generally, a defendant does not have standing to object to the search of a vehicle that he "did not own and in which he was neither the driver nor a passenger." *United States v. Luna-Santillanes*, No. 11-20492, 2012 WL 1019601, at *6 (E.D. Mich. March 26, 2012) (citing *Elmore*, 304 F.3d at 560-61); *see also United States v. Baker*, 221 F.3d 438, 443 (3d Cir. 2000) (to support expectation of privacy in a vehicle, although outright ownership is not required, there must be "clear evidence of continuing possession and control"); *United States v. O'Neal*, 16 F. App'x 539, 541 (8th Cir. 2001) ("It is well established that an individual does not have a reasonable expectation of privacy in another person's automobile") (citing *Rakas*, 439 U.S. at 134).

**Analysis**

As noted above, the United States submitted a sworn statement from Drug Enforcement Agency Special Agent Jennifer Traud to the effect that Argueta owned the truck that contained the incriminating drugs. (Docket # 268, p. 4). Gonzalez carries the burden of proof on the issue of standing. *United States v. Mathis*, 738 F.3d 719, 729 (6th Cir. 2013). Gonzalez has not alleged or submitted any proof that, at the time of the search, he, in fact, owned the truck, drove the truck, was a passenger in the truck, or was in possession or control of the truck. He, therefore, has no standing to object to the search of some else's (Argueta's) truck.

Gonzalez argues that, prior to the search, the intercepted wiretaps would have given authorities reason to believe that he owned the truck. In a recorded call, an unidentified male asked Gonzalez whether "[o]nce I turn [the truck] in[,] [there will be a] guarantee that the title is clean from you[?]" to which Gonzalez responded "[w]hat's mine is mine. It's mine. It's under my name." (Docket # 265, p. 1). Standing is based on actual, not purported, ownership. Gonzalez offers (and the Court finds) no authority

5

for the proposition that one may obtain an expectation of privacy in a truck, which society is prepared to honor, simply by misleading others into believing that he might have a proprietary interest in it.

## RECOMMENDATION

Because Gonzalez lacks standing to object to the search, the Magistrate Judge RECOMMENDS that the Court DENY Gonzalez' motion to suppress (Docket # 255).

November 19, 2018

Lanny King, Magistrate Judge
United States District Court

## NOTICE

Therefore, under the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 474 U.S. 140, 147 (1985).

November 19, 2018

Lanny King, Magistrate Judge
United States District Court